O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SUSAN GRAVIANO FEINSTEIN, et al., | ) ) ) | Case No. CV 14-01981 DDP (Ex) |
| | ) | **ORDER GRANTING PLAINTIFFS'** |
| Plaintiff, | ) | **MOTIONS TO REMAND** |
| | ) | |
| v. | ) | [Dkt. Nos. 7, 14] |
| | ) | |
| CARNIVAL PLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

    Presently before the Court are Plaintiffs' motions to remand (Docket Nos. 7, 14) and Defendants' motion to dismiss for lack of personal jurisdiction (Docket No. 6). For the reasons stated in this order, the motions to remand are GRANTED. The motion to dismiss is therefore VACATED AS MOOT.

**I. Background**

    Plaintiffs Susan Graviano Feinstein ("Susan") and Mitchell Feinstein ("Mitchell") (collectively, "Plaintiffs"), a married couple, were passengers on the cruise vessel known as the *Queen Mary II*. (Complaint ¶ 23.) Plaintiffs bring claims against various defendants allegedly involved in injuries Susan sustained while on

the cruise. Defendant Carnival PCL dba Carnival U.K. ("Carnival"), trading as Cunard Line Limited, designed, built, and operated the *Queen Mary II*. (Id. ¶ 5.) Defendant Princess Cruise Lines, Ltd. ("Princess") is alleged to be Carnival/Cunard's sister company.[1] (Id. ¶ 10.) Defendant Fleet Maritime Services ("Fleet") was later added by Plaintiffs as the entity who purportedly directly employs and pays the medical staff for the *Queen Mary II*, though it appears that Carnival PCL performed the actual screening, interviewing, and hiring of medical professionals. Plaintiffs allege that the foregoing Defendants (collectively, "Corporate Defendants") jointly partook in a common program to provide medical care to passengers onboard each and all of Carnival's various cruise vessels, including the *Queen Mary II*. (Id. ¶ 29.) Defendants Peter Taysum ("Dr. Taysum"), Grant Brown ("Brown"), and Sophie-Ella Howes ("Howes") worked as medical staff on the *Queen Mary II* at the time of Susan's injury. (Id. ¶¶ 44, 47 & 55.)

Plaintiffs took a cruise on the *Queen Mary II* in July 2012, leaving from and returning to Brooklyn, New York, with stops in Boston and Nova Scotia. (Id. ¶ 23.) On July 1, 2012, the first day of the cruise, Susan summoned medical staff to her cabin because she was experiencing shortness of breath. (Id. ¶ 43.) In Plaintiffs' cabin, Defendants Dr. Taysum and/or nurse Brown

---

[1] In the papers and at oral argument, Defendants assert that Princess and Carnival are not sister companies. Instead, Carnival/Cunard is a subsidiary of Carnival PLC and Princess is a subsidiary of Carnival Corporation. Carnival PLC and Carnival Corporation, according to Defendants, are not related in any way by their corporate structure. However, Defendants represented to the Court at oral argument that Carnival PLC and Carnival Corporation have a contract whereby they solicit and engage in joint listing and financing of cruises and cruise ships for both companies and their subsidiaries.

2

1  examined Susan and diagnosed her as suffering from a panic attack.
2  (Id. ¶ 44.) They advised Susan to place a paper bag over her head
3  and hold her breath. (Id.) Dr. Taysum then moved Susan to the
4  vessel's medical facility where he performed a limited examination,
5  decided she was suffering from a panic attack, noted her history of
6  hypertension, tachycardia, increased cholesterol, and obesity, and
7  advised her to lose some weight. (Id. ¶ 45.)
8      Two days later, on July 3, 2012, Mitchell called the vessel's
9  medical office to report that Susan was having difficulty breathing
10 again. (Id. ¶ 47.) Nurse Howes went to Plaintiffs' cabin where she
11 discovered that Susan was conscious, speaking in broken sentences,
12 and had a rapid pulse. (Id.) After diagnosing Susan with a panic
13 attack, Nurse Howes advised Susan to stop by the vessel's medical
14 facility during normal business hours. (Id.)
15     On July 5, 2012, the fifth day of the cruise, Susan again
16 visited Dr. Taysum at the vessel's medical facility with similar
17 symptoms. (Id. ¶ 48.) Additionally, she was coughing with flecks of
18 blood and indicated her concern of experiencing a heart attack.
19 (Id. ¶¶ 48-49.) Dr. Taysum conducted no medical tests; instead, he
20 maintained his prior diagnosis that she was experiencing a panic
21 attack and again instructed her to breathe in a paper bag. (Id. ¶
22 49.) Susan protested that she did not think that she was having an
23 anxiety attack, but Dr. Taysum ignored her complaints. (Id.) A few
24 minutes later, Susan called Dr. Taysum back and reported that she
25 was still coughing up blood. (Id. ¶ 50.) Dr. Taysum explained to
26 Susan that coughing heavily can lead to coughing up blood and
27 prescribed Susan over-the-counter cough medications. (Id.) Susan
28 was then released from the ship's medical facility. (Id.)

3

1    The next morning, on July 6, 2012, Susan suffered a series of
2 four cardiac arrests. (Id. ¶¶ 52-54.) In Plaintiffs' cabin, Dr.
3 Taysum attempted to resuscitate Susan as her husband looked on in
4 horror. (Id. ¶ 53.) As a result of the four cardiac arrests, Susan
5 lapsed into a coma and currently remains in a comatose state,
6 unable to walk, talk, or respond to external stimuli. (Id. ¶ 56)
7    On June 26, 2013, Plaintiffs filed a Complaint in state court,
8 alleging various negligence claims and theories of vicarious
9 liability against all Defendants. The action was then removed to
10 this Court in March 2014, with Defendants invoking diversity
11 jurisdiction and claiming that Princess, a California citizen, is a
12 sham defendant.[2] Plaintiffs have filed two motions to remand the
13 action to the state court, arguing that (1) the "Forum Defendant
14 Rule" prevents removal because Princess is a citizen of the state
15 in which the action was brought and (2) Princess is not a sham
16 defendant.

**II. Legal Standard**

18    Generally, a defendant may remove a case from state court to
19 federal court if the case could have originally been filed in
20 federal court. 28 U.S.C. § 1441(a); see also Snow v. Ford Motor
21 Co., 561 F.2d 787, 789 (9th Cir. 1977). However, an exception to
22 this general rule is the "Forum Defendant Rule," which states that
23 "[a] civil action otherwise removable solely on the basis of

---

[2] Two different defendants filed notices of removal, purportedly to correct any untimeliness of the first attempted removal by having a later-served defendant file the second notice of removal. This fact does not affect the Court's analysis here, as Plaintiffs do not argue for remand on the basis that removal was untimely. Plaintiffs have filed two motions to remand, each responding to one of the notices of removal, but both motions make the same arguments and address the same issues.

4

[diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Therefore, "the presence of a local defendant at the time removal is sought bars removal." Spencer v. U.S. Dist. Court for Northern Dist. of Ca., 393 F.3d 867, 870 (9th Cir. 2004).

However, if a defendant has been fraudulently joined, that defendant's citizenship may be ignored for purposes of determining whether removal was proper. See McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." Id.; see also Zoqbi v. Federated Dept. Store, 767 F.Supp. 1037, 1041 (C.D. Cal. 1991). However, if the local defendant is not fraudulently joined, removal is improper. 28 U.S.C. § 1441(b).

As the removing party, a defendant bears the burden of proving federal jurisdiction. Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996); see also Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). The removal statute is strictly construed against removal jurisdiction, and federal jurisdiction must be rejected if any doubt exists as to the propriety of removal. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

**III. Discussion**

Defendants have removed this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1441(a). Plaintiffs argue that this action must be remanded because Defendant Princess is a

5

citizen of California, where this action was brought, and therefore the action is not removable pursuant to the "Forum Defendant Rule." Defendants contend that removal of this action was proper in spite of the Forum Defendant Rule because Princess was fraudulently joined and therefore Princess's citizenship should be ignored for purposes of determining whether the action is removable.[3] Specifically, Defendants argue that Plaintiffs' various negligence claims against Princess fail as a matter of law because after 2010 (1) Princess neither owned nor operated the *Queen Mary II* or its medical facility, (2) Princess was not involved in equipping the vessel's medical facility, and (3) Princess did not hire or train any of the doctors or nurses who treated Susan.

The exact nature of the relationship between Carnival and Princess is not completely clear from the briefs, evidence, and oral argument presented by the parties. Plaintiffs allege in the complaint that Princess and Cunard (who Defendants contend is essentially the same as Carnival) are *sister* corporations, meaning that they are subsidiaries of the same parent company. In their motion to remand, Plaintiffs appear to contend that Carnival is the *parent* company of Princess. Defendants contend that after 2010, there has been no formal corporate relationship between Princess and Carnival. At oral argument, Defendants represented that there exists a contractual, but not corporate, relationship between the parent company of Carnival and the parent company of Princess.

---

[3]No party disputes that complete diversity of citizenship exists in this case. Further, no party disputes that Princess is a citizen of California and that no other party is a citizen of California, so that Princess is the only possible local defendant. Therefore, the sole issue for the Court to decide in determining whether removal was proper is whether Princess is a sham defendant.

6

Further complicating the facts regarding the relationships between the Corporate Defendants is the role of Fleet. Plaintiffs allege that Fleet is a company with no assets who appears to formally employ and pay the medical staff aboard Carnival's ships, but has no role in the operations of Carnival or its vessels. Fleet has an as-yet unclear relationship with Princess and Carnival. As to Princess, Plaintiffs represent that many of the directors and officers of Princess are also directors and officers of Fleet and, further, that Fleet was created, in part, by Princess.

During the period from 2004 to 2010, there was some degree of common management between Carnival and Princess. Plaintiffs state that "Plaintiffs' claims against Princess are based, in part, on facts that Princess combined its efforts with its parent company Carnival U.K. and Fleet Maritime to operate the *Queen Mary II*'s medical center. Princess aided in the formulating and/or promulgating of the rules, procedures, regulations and protocols for the care and treatment of passengers on board the *Queen Mary II*." (Docket No. 7, p.3.) It further appears that at one time, Dr. Tarling was involved in overseeing the medical centers on ships operated by both Carnival and Princess. There are also allegations that Princess potentially participated in the hiring of medical staff that were aboard the *Queen Mary II* at the time of the incident.

Given the complex corporate relationships, which appear to have changed over time, the Court cannot say with certainty that Plaintiffs could not possibly have a viable negligence claim against Princess. Plaintiffs, having been unable to obtain sufficient discovery to date to fully understand the various

7

arrangements, agreements, and corporate relationships between the Corporate Defendants, have properly named all of them as entities who could potentially be found liable for the allegedly negligent acts at issue in this case. The Court finds that Defendants have not met their high burden of showing that no claim could possibly be asserted against Princess. Princess is not fraudulently joined.

**IV. Conclusion**

For the reasons stated in this order, the Court GRANTS the motions to remand. The currently pending motion to dismiss for lack of personal jurisdiction is VACATED AS MOOT.

IT IS SO ORDERED.

Dated: September 19, 2014

DEAN D. PREGERSON
United States District Judge

cc: order, docket, remand letter to
Los Angeles Superior Court, No. BC 513564